**In re the Marriage of E.L.S., Appellant/Cross–Respondent,**

v.

**F.M.S., Respondent/Cross–Appellant.**

### No. 59650.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 18, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
March 24, 1992.

Application to Transfer Denied
June 2, 1992.

Lewis, Rice & Fingersh, James W. Herron, David L. Coffman, St. Louis, for appellant, cross-respondent.

Julius H. Berg, Clayton, for respondent, cross-appellant.

AHRENS, Judge.

This is a consolidated appeal from a decree of dissolution entered December 18, 1990. Wife challenges the trial court's division of marital property and enforcement of an oral postnuptial agreement alleged by husband. Husband cross-appeals, alleging the trial court erred in requiring he make a cash payment to wife for the purchase of a residence and furnishings comparable to the marital home awarded husband. We reverse and remand.

Husband and wife were married on September 21, 1943. No children were born of the marriage. Although husband is an attorney, he ceased the practice of law early in the marriage and has been "semi-retired" for nearly thirty years. Husband's primary efforts have been devoted to acquiring and successfully managing substantial investments. Wife was not employed during the marriage. At the time of the dissolution hearing, husband and wife were ages 85 and 74, respectively.

Wife brought no money into the marriage. Husband brought into the marriage a relatively small, unspecified amount of stock in General Motors, Exxon, and Mobil. All other assets were acquired during the marriage through husband's investment activity and were titled in husband's name or wife's name, as determined by husband. At the time of trial, the securities and investments held in husband's name totalled $36,915,725.42, while those held in wife's name totalled $4,414,422.06. The parties also owned a marital residence and furnishings, bank accounts, vehicles, and other personal property.

In 1973, wife filed a petition for dissolution of the parties' marriage; husband filed a cross-petition. However, the parties dismissed their actions in September, 1975, each filing separate dismissal memoranda. In the case now before us, husband alleges the existence of an oral agreement conditioning the dismissals, whereby the parties agreed to exclude from marital property all assets acquired during the marriage, except for the family residence and furnishings. Wife denies the existence of any such agreement and contends she dismissed her petition on the strength of husband's offer to "sit down and work it out." Wife claims husband told her he was very ill and had only a few months to live, and that he could not go through the "misery" of a divorce. Wife further claims she unsuccessfully attempted to "talk things over" with husband on three separate occasions after the dismissal.

On December 18, 1990, the trial court entered its decree dissolving the parties' marriage. The court found that husband had established the existence of a valid oral agreement for the division of the parties' property. Pursuant to that agreement, the court awarded to husband as separate property the securities titled in his name and awarded to wife as separate property those titled in her name. Further, the court awarded husband the marital residence and all its furnishings, with the exception of wife's bedroom furniture, and required husband to pay wife $2,000,000.00 in cash for the purchase of a comparable home and furnishings. No maintenance was requested, and none was awarded. No

award of attorneys' fees was made to either party, and court costs were taxed against husband.

Wife raises six points on appeal. In her first three points, wife claims the trial court erred in finding the alleged oral agreement enforceable because (1) the court failed to apply the amended version of § 452.330.2(4) RSMo, which became effective prior to the filing of wife's petition and required that the alleged agreement between the parties be in writing; (2) the evidence relied on by the court failed to support the existence of the agreement; and (3) the agreement was unconscionable. Wife's final three points allege the trial court erred in dividing the parties' marital property because the court (1) considered alleged conduct of wife which occurred subsequent to the time the court found the marriage was irretrievably broken and which did not place an extra burden on the marriage; (2) failed to consider husband's alleged misappropriation of marital funds and improper relationship with his secretary; and (3) awarded the marital residence to husband when the home is particularly suited to wife's needs.

In his cross-appeal, husband alleges error in the trial court's award to wife of $2,000,000.00 as part of the division of marital property for the purchase of a residence and furnishings comparable to the marital home. Husband contends the award is excessive, in that it exceeds the total value of the marital property. We dispose of this case based upon a consideration of wife's second point.

■ Section 452.330.2(4) RSMo 1986 provides in pertinent part:

2. For purposes of sections 452.330 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

*     *     *

(4) Property excluded by valid agreement of the parties; ...[1] Before any prop-

erty can be excluded from the term "marital property" pursuant to § 452.330.2(4), "the evidence must clearly and unequivocally show an agreement whereby both parties intend that the property be excluded from their marital property." *Rogers v. Rogers,* 573 S.W.2d 425, 426 (Mo.App.1978); *Degerinis v. Degerinis,* 724 S.W.2d 717, 720 (Mo.App.1987). The party asserting the valid agreement has the burden of proving the agreement by clear and convincing evidence. *Degerinis,* 724 S.W.2d at 720. On the record before us, husband has failed to meet this burden.

■ In finding that husband established the existence of the alleged agreement, the trial court adopted, almost verbatim, husband's proposed findings of fact. Although such a practice is not *per se* erroneous, it is unwise in a contested case. *Kreitz v. Kreitz,* 750 S.W.2d 681, 684 (Mo. App.1988). "Even the most conscientious advocate cannot reasonably be expected to prepare a document which would reflect precisely the trial court's view of the evidence." *Binkley v. Binkley,* 725 S.W.2d 910, 911 n. 2 (Mo.App.1987). While we recognize that memoranda from counsel may aid a trial court in drafting its decree, the final decree is the court's, not counsel's. *Id.* Here, the trial court's findings reflect husband's argumentative style, and several are not supported by the record. With due regard to our standard of review under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we consider in turn each factor on which the trial court relied in concluding that husband by clear and convincing evidence established the existence of the alleged oral agreement.

First, the trial court relied on husband's testimony concerning a detailed oral agreement allegedly conditioning the parties' dismissals of their original petitions for dissolution. At trial, husband testified that on September 24, 1975, wife came to his bedroom and "said that she didn't want a divorce, did I. And I said under certain

---

1. Section 452.330.2(4) was amended in 1988 to read, "(4) Property excluded by valid *written* agreement of the parties" (emphasis added). Because we dispose of this case on other grounds, we do not decide the applicability of the writing requirement to the alleged agreement in this case.

circumstances, no. And we discussed the circumstances and she agreed to them and we then proceeded to dismiss the case." According to husband, he and wife, item by item, discussed and agreed to the following terms: (1) "our properties would remain our assets, her assets would remain separate property and my assets would remain separate property"; (2) each party could spend what he or she wanted without questioning from and accounting to the other; (3) husband would pay all the expenses at the marital home, which, together with the furniture, would remain the property of both parties and which would not be sold or mortgaged without mutual consent; and (4) increases in husband's assets would be his own, and increases from wife's assets would be her own.

In his deposition of October 3, 1989, husband testified that he and wife entered the agreement on September 26, 1973, not on September 24 as he testified at trial. Further, husband at the deposition was asked to state "exactly" what he recalled each party had said during the discussion culminating in the alleged agreement. In response, husband stated, "I said we'll dismiss the divorce on a condition that you agree my estate is my own and yours is your own. And there will be no questions asked and there hasn't been." When asked whether husband described to wife what he meant by the term, "my estate," husband answered, "I would assume she knew that her money was hers and my money was mine." Husband at trial testified that he had given a true, "straight, full answer" when asked at his deposition to recite exactly what was said in the course of the alleged discussion with wife.

The trial court in its findings relied on the testimony of husband's attorney and the dismissal memoranda themselves as evidence corroborating husband's testimony. However, neither evidences the detailed oral agreement husband alleges. Although husband met with his attorney, Hal Coleman, the day after the alleged agreement and requested that he draft a dismissal memorandum, husband did not ask him to reduce the agreement to writing and, according to Coleman, stated only that he and wife had "worked out their agreement." Coleman further testified, "[I]t's very difficult for me to say that there had been negotiations. The posture was his is his and hers is hers...." Coleman gave no testimony concerning the facts and circumstances leading to the dismissal of the petitions. Although his testimony may reflect husband's settlement posture prior to the dismissal, it in no way evidences the existence of the detailed, oral agreement husband alleges.

Similarly, the dismissal memoranda provide no support for husband's testimony. They reference no settlement or agreement and merely recite that each party dismisses his or her petition without prejudice. Unlike husband, wife did not consult with an attorney prior to filing her dismissal. The parties went to the courthouse together, and wife wrote the memorandum in her handwriting after being told by husband what to write. The memoranda evidence no intention of any alleged agreement.

As further evidence in support of husband's testimony, the trial court references certain conveyances of real estate and a "proposed settlement document" prepared on behalf of wife and submitted to husband. Through the conveyances, wife executed a deed conveying certain real property to husband's sister, and husband executed a deed conveying real property to wife. However, contrary to the trial court's finding, nothing indicates the deeds were executed pursuant to an agreement to divide property.

Similarly, nothing in the "proposed settlement document" is reflective of any such agreement. The document was an unsigned memorandum, apparently prepared by an accountant on wife's behalf, purporting to "set forth a proposal which appears to satisfy the divorce settlement demands" of wife. The document contemplates the creation of a charitable remainder trust and marital and property rights settlements to be evidenced by separate written agreements, including periodic alimony payments and a life estate in wife in the trust income. The terms of the oral agreement alleged by husband are not even re-

motely similar to those of the proposed settlement document.

Further, the proposal recites nothing which supports the trial court's finding that the document "recognized that a full disclosure was made." In fact, the evidence was contradictory concerning whether full disclosure was made prior to any alleged agreement to exclude property from designation as "marital property." Husband claims wife had full information concerning his assets as a result of financial statements filed in the original dissolution action. However, husband acknowledged that the parties began arguing in 1973 when wife discovered husband had created four substantial trusts for various members of his family. Wife testified that husband upon her inquiry refused to furnish details of the trusts, and that she never consented to the transfer of marital funds into the trusts. Husband testified he saw no reason to consult with wife. This evidence is not indicative of the full disclosure of assets husband claims.

Lastly, the trial court found the parties' conduct after the date of the agreement corroborative of the agreement's existence. Specifically, the court found that after the agreement (1) the parties dismissed their petitions for dissolution; (2) the parties did not inquire, question, or discuss how the other spent his or her money, what gifts were made, or what income was reported on tax returns; (3) husband paid all household expenses; (4) wife conveyed certain real property to husband's sister and husband conveyed real property to wife; (5) the parties lived separately at the family residence, neither attempting to sell or mortgage it; and (6) husband no longer bought wife's automobiles or paid her "personal bills at Saks and Neiman-Marcus."

A thorough review of the record reveals that much of the conduct listed occurred *prior* to the date of the agreement and merely *continued* afterward. Throughout the marriage, husband titled property and stocks in individual names, as determined by him, and treated the stocks as if they were solely the property of each party. From the time a dispute developed in 1973

concerning husband's creation of five trusts, each of the parties filed separate tax returns. Both before and after 1975, wife managed her own stocks, husband paid household expenses and real estate taxes on the marital residence, each party maintained separate checking accounts and separate bedrooms in the marital home, and husband made substantial gifts of marital assets to persons other than wife.

The trial court recognized that "some of the foregoing conduct and acts of the parties were substantially the same after the dismissal of the 1975 dissolution action as before," but stated that "there was a material change after 1975 in that husband was then legally obligated to continue the acts and conduct, pursuant to the Agreement." This reasoning begs the question of whether an agreement existed in the first instance. The parties' conduct after the alleged agreement does not support husband's testimony that an agreement existed.

On this record, we find no clear and convincing evidence of an agreement whereby both parties intended that the property in question be excluded, pursuant to § 452.330.2(4), from the broad purview of the definition of marital property. *See Rogers,* 573 S.W.2d at 426. Husband contends that his testimony constitutes substantial evidence under our standard of review; however, this argument ignores the necessity for a finding of clear and convincing evidence that *both* parties intended to exclude property from marital property. No substantial evidence supports such a finding.

We are mindful of our obligation to give due regard to the trial court's opportunity to determine the witnesses' credibility. *In re Marriage of Hall,* 801 S.W.2d 471, 472 (Mo.App.1990). The court was entitled to disbelieve wife's testimony; however, husband still bore the burden to prove the existence of the alleged agreement by clear and convincing evidence, which on this record he has failed to do. The property the trial court found to be separate pursuant to the oral agreement alleged by husband is marital property to be divided upon

remand in such proportions as the court deems just after considering all relevant factors, as set forth in § 452.330 RSMo.

In a confusing finding,[2] the court appears to state that even if there were no valid postnuptial agreement, a "Living Agreement" between the parties existed by virtue of their conduct, living arrangements, lifestyles, separate financial arrangements, and separate filing of tax returns, such that the court would have entered the same division of property pursuant to the "Living Agreement" that it entered pursuant to the alleged oral agreement. We have carefully scrutinized this finding in an effort to avoid remand. However, because the court improperly set aside the disputed property as separate property, whether pursuant to the oral postnuptial agreement or the "Living Agreement," we must reverse and remand for a new division of marital property pursuant to § 452.330.

In light of the necessity to remand this case for a division of marital property, we decline to rule on wife's remaining points and find husband's cross-appeal is moot. Any further appellate review would be meaningful only within the context of the division of marital property made by the trial court on remand. The case is reversed and remanded to the trial court for further proceedings consistent with this opinion. Costs are taxed against husband.

**2.** The finding recites: "After considering the relevant factors in Section 452.330 RSMo, the Court finds that a fair and just distribution of the property of the parties, even if there were no valid agreement separating the property of the parties in 1975, the conduct of the spouses, their living arrangements, created a "Living Agreement" financially advantageous to the parties would require the Court to divide the marital property and make other orders as the Court deems just and equitable in their case."