Fredrico Lowe–BEY, Appellant,

v.

**STATE of Missouri, Respondent.**

**No. ED 90360.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 28, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2008.

Application for Transfer Denied
Jan. 27, 2009.

Edward S. Thompson, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Attorney General, Jefferson City, MO, for respondent.

ROBERT G. DOWD, JR., Presiding Judge.

Fredrico Lowe–Bey ("Movant") appeals from the denial of his motion for release pursuant to Section 547.037, RSMo Cum. Supp.2007,[1] following DNA testing pursuant to Section 547.035. In 1988, Movant was convicted by a jury of forcible rape, Section 566.030, RSMo 1986, forcible sodomy, Section 566.060, RSMo 1986, and tampering with a witness, Section 575.270, RSMo 1986, for which Movant was sentenced as a prior, persistent, and Class X offender to eighty-five years' imprisonment. On appeal, Movant contends the motion court erred in denying his motion for release under Section 547.037 because the results of the DNA tests demonstrated his actual innocence of the crimes for which he was convicted. We find the motion court's findings of fact and conclusions of law are not clearly erroneous, and affirm accordingly.

The evidence adduced at trial showed that at approximately 5:00 a.m. on the morning of May 21, 1988, the victim, who was seven months pregnant, was walking down the street to her home. As the victim walked down the street, a car with three men riding in it passed her and one of the men asked the victim if she needed a ride. When the victim answered no, the car proceeded to the next corner, made a u-turn and came back toward victim. A man, who the victim later identified as Movant, jumped out of the car, grabbed the victim by the hair, and pulled her into an alley. The car also pulled into the alley and the other two men got out. The victim struggled with Movant. She was knocked to the ground, hit with a stick, and kicked in the side. One of the three men ripped the victim's dress and took off her underclothes. At this time, Movant was up over her and the victim was able to "get a good look at him." While the other two men held the victim, Movant sodomized and raped the victim without ejaculating.

After the attack, Officer Rubin Haman ("Officer Haman") and Officer James Long ("Officer Long") responded to a 911 call and arrived at the scene. The officers found the victim's underclothes, shoes, and wallet in the alley. The victim was taken to the hospital between 6:30 a.m. and 7:00 a.m., approximately an hour and a half

---

1. All further statutory references are to RSMo Cum.Supp.2007 unless otherwise indicated.

hour to two hours after the rape, and a rape kit was taken. The vaginal and oral smears were submitted to the police laboratory, along with the victim's clothing. Criminalist Joseph Crow ("Crow") tested the items. An examination of the vaginal smear disclosed the presence of four or five sperm heads that did not have tails. No seminal fluid was found in the oral swabs taken from the victim.

At trial, Crow testified that the number of sperm and the absence of tails on the sperm was tied to the length of time between intercourse and the taking of the swab. Crow stated that typically, the tails will break off from the sperm within about twenty-four hours after intercourse. Crow further testified that the number of sperm decreases as time goes by, and that in some women the sperm could completely disappear within twenty-four hours of intercourse. Crow testified that the sperm heads would have to have been from someone other than the rapist if there was no ejaculation or pre-ejaculation discharge during the rape. Crow further testified that there was insufficient seminal fluid present in the vaginal swab to determine the blood type of the person who deposited the sperm.

Crow's examination of the victim's clothing disclosed a stain in the crotch of her panties. Analysis of the stain revealed the presence of seminal acid phosphates, an enzyme found in seminal fluid. However, the stain in the victim's panties also contained insufficient amounts of seminal fluid for Crow to determine the blood type of the person who deposited the seminal

fluid. Crow testified the results of his tests were consistent with the victim having sex with someone else approximately twenty-four hours before the rape.

In closing arguments, both the prosecutor and defense counsel argued the sperm found in the vaginal smear and the seminal stain found on the victim's panties were probably not from Movant, but instead probably came from a previous sex act.

The jury found Movant guilty on all counts. The trial court sentenced Movant as a prior, persistent, and Class X offender to consecutive terms of thirty-five years' imprisonment for forcible rape, thirty-five years' imprisonment for forcible sodomy, and fifteen years' imprisonment for tampering with a witness.[2] Movant's convictions and sentences were affirmed on direct appeal. *State v. Lowe–Bey*, 807 S.W.2d 132 (Mo.App. E.D.1991).

On September 20, 2001, Movant filed a post-conviction motion for DNA testing of physical evidence collected in the case.[3] The motion court held an evidentiary hearing on the motion. At the hearing, Movant offered the testimony of Michael Bourke ("Bourke"). Bourke reviewed the forensics laboratory report prepared by the St. Louis police in Movant's case, along with the trial testimony of Crow and the victim. Bourke characterized Crow's testimony that the tailless sperm most likely indicated that the sperm had been deposited about twenty-four hours before the sample was collected as "very reasonable." Bourke further agreed there was a "reasonable probability" that the sperm came from a previous sexual encounter. Bourke

**2.** The conviction for tampering with a witness was based on evidence that the victim received a phone call from Movant where he threatened to have her killed if she pressed charges. The victim recognized Movant's voice from the rape.

**3.** Movant filed his motion pursuant to Rule 29.17. However, on August 21, 2001, Rule 29.17 was repealed following the enactment of Section 547.035. Section 547.035 is identical in all relevant respects to Rule 29.17. *Weeks v. State*, 140 S.W.3d 39, 43 n. 4 (Mo. banc 2004).

also testified other factors such as aggressive vaginal secretions or a male without motile sperm could cause sperm to lose their tails. Bourke stated even if the sperm were not those of the rapist, epithelial cells from pre-ejaculate fluid could belong to the rapist and could contain DNA from which a profile could be developed.

As a result, the motion court granted Movant's motion and ordered DNA testing on the vaginal swab taken from the victim. In its order, the motion court noted there is a "reasonable probability" of exculpatory results "only if a DNA profile of more than one male can be found in the physical specimens. If there is DNA evidence of only one male which excludes [M]ovant, the Court finds that this would not be exculpatory based upon the physical evidence in the panties and the vaginal smear and based upon the testimony of both experts that the small number of tailless sperm is consistent with an earlier sexual encounter."

Testing on the vaginal swab concluded that the male DNA found on those items was not consistent with the DNA sample provided by Movant. Thereafter, Movant filed a motion for release pursuant to Section 547.037. In response and in opposition to Movant's release, the State argued the DNA on the vaginal swab originated from consensual sex prior to the rape. Thus, the State asserted the results of the DNA testing were consistent with the evidence presented at trial and were not exculpatory. Thereafter, the motion court continued the hearing on Movant's motion so that a buccal swab could be obtained from the victim's boyfriend at the time of the rape and subjected to DNA testing. The boyfriend's DNA did not match the male DNA found on the vaginal swab. The seminal fluid stain found on the victim's panties was also tested and found to contain a mixture of at least two male

lineages. The same DNA present in the vaginal swab was present in the victim's panties. The boyfriend was also excluded as the major donor of the DNA sample recovered from the victim's panties. No conclusion could be drawn as to whether boyfriend was the minor donor to that sample. Thereafter, Movant filed another motion for release.

At the hearing on Movant's motion for release, the parties submitted a stipulation where they agreed: Movant was not the person whose DNA was in the vaginal swab or panties; the victim's boyfriend was likewise excluded as the person whose DNA was in the vaginal swab; the panties contained a mixture of DNA belonging to the same unidentified male whose DNA was in the vaginal swab and the victim's boyfriend's DNA; and the DNA in the vaginal swab belonged to a single, unidentified male.

The victim testified at the hearing that she was sexually active with men other than her boyfriend during the period when the rape occurred. She identified one of those men as Fred Knox ("Knox"), who had been murdered since the rape. The victim testified that she had also had sex with a couple of other men whose names she could not remember during that period of time. The victim stated that she probably had sex with one of those three men the day before the rape. She recalled having sex with Knox within a week prior to the rape. The victim testified she never mentioned those men to the prosecutor during the rape case.

The motion court left the evidence open for the attorneys to locate DNA evidence related to Knox. A blood sample from Knox was located and subjected to DNA testing. Knox was excluded as the source of the DNA found in the vaginal swab and the victim's panties.

At the final hearing, Movant denied he committed the rape and contended the charges were manufactured by two police officers with whom he had a prior dispute. The victim testified, as she did at trial, that she knew Movant from the neighborhood and that she recognized him as one of the three people who assaulted her and the one who sodomized and raped her. The victim said she did not initially give Movant's name to the police because she thought the rape was her fault for being out so late, and she just wanted it to go away. She testified she was absolutely positive at the time of the rape and at the post-conviction hearing that it was Movant who sodomized and raped her.

The motion court denied Movant's motion for release. In its findings of fact and conclusions of law, the motion court noted its earlier statement that DNA evidence of only one male which excluded Movant would not be exculpatory. The motion went on to conclude:

> Now, four years later, the evidence from all the hearings and the DNA testing is that the seminal stain in the panties and on the vaginal smear is from one single unidentified male. This finding and the facts that the panties were removed by the rapist, never put back on the victim, that they were found in the alley by the police and that there were only 4–5 tailless sperm in the vaginal smear fails to demonstrate movant's innocence of the crimes for which he was convicted and sentenced.

The motion court rejected Movant's argument that the DNA on the panties matches the DNA on vaginal smear because the rapist may have wiped himself off on the panties after the rape or that the panties were in close proximity to the rape as mere speculation and unsupported by any evidence. The motion court concluded the biological evidence obtained from the vaginal smear and panties did not match Movant and all the evidence and reasonable inferences therefrom show that it came from a prior sex act. This appeal follows.

In his sole point, Movant contends the motion court erred in denying his motion for release under Section 547.037 because the results of the DNA tests demonstrated his actual innocence of the crimes for which he was convicted. Movant asserts the DNA on the victim's panties and vaginal swab, which did not match Movant, most likely belonged to the rapist, and thus, a reasonable trier of fact would not have found Movant guilty beyond a reasonable doubt had the DNA tests been available at trial.

Section 547.037 provides that the motion court shall issue findings of fact and conclusions of law. Section 547.037.6. The statute further provides that an "appeal may be taken from the court's findings and conclusions as in other civil cases." *Id.* Therefore, we will apply the same standard of review as in other post-conviction proceedings. *See Snowdell v. State,* 90 S.W.3d 512, 514 (Mo.App. E.D.2002)(construing an appeal from the denial of a motion for DNA testing filed pursuant to Section 547.035, which contains a similar appeal provision).

Our review in post-conviction proceedings is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Snowdell,* 90 S.W.3d at 514. The motion court's findings and conclusions are clearly erroneous if, after reviewing the entire record, this court is left with the definite and firm impression that a mistake has been made. *Id.*

Section 547.037 provides "[i]f testing ordered pursuant to section 547.035 demonstrates a person's innocence of the crime for which the person is in custody, a motion for release may be filed in the sen-

tencing court." Section 547.037.1. If the prosecutor opposes the movant's release, a hearing must be held at which "[t]he movant shall have the burden of proving all the allegations of the motion by a preponderance of the evidence." Section 547.037.4. If the motion court finds the DNA testing "ordered pursuant to Section 547.035 demonstrates the movant's innocence of the crime for which he or she is in custody, the court shall order the movant's release from the sentence for the crime for which the testing occurred. Otherwise, relief shall be denied the movant." Section 547.037.5.

Movant engages in a lengthy discussion of the higher *habeas corpus* standards for determining actual innocence and why that standard of proof should apply to demonstrating innocence under Section 547.037. However, Movant's discussion is unnecessary because the statute specifically and unambiguously applies the preponderance of the evidence standard in subsection 4 of Section 547.037.[4] "Preponderance of the evidence" is defined as that degree of evidence that is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not. *George v. McLuckie*, 227 S.W.3d 503, 507 (Mo.App. W.D.2007). Thus, the question for this court to decide is whether the motion court clearly erred in finding Movant failed to demonstrate by a preponderance of the evidence that he is innocent of the crimes of forcible rape and forcible sodomy.

The motion court's finding that the DNA recovered from the vaginal swab and the

panties came from a single unidentified male was consistent with the stipulation Movant entered into at the earlier post-conviction hearing. The motion court's conclusion that that presence of DNA from a single unidentified male, in the context of the evidence presented at trial and during the post-conviction proceedings, did not demonstrate that Movant was innocent of the crimes for which he was convicted is not clearly erroneous.

The presence of the DNA from a single unidentified male was not exculpatory because the victim's testimony at trial and at the post-conviction hearings was that the rapist did not ejaculate. *See State v. Fults*, 98 S.W.3d 877, 879 (Mo.App. E.D. 2003)(the motion court denied DNA testing under Section 547.035 where there was no evidence presented at trial as to whether the defendant had ejaculated into the victim's vagina and, therefore, a lack of the defendant's DNA on the vaginal swab would not prove him innocent of the crime charged.) The victim further testified at the post-conviction hearing that she had sex prior to the rape with other men, several of whom she was unable to identify. The victim's testimony of prior sexual activity was supported by the expert testimony of Crow at trial that the condition of the sperm found in the vaginal swab was consistent with the victim having sex with someone else days before the rape. Moreover, Movant's expert witness, Bourke, at the post-conviction proceedings characterized that conclusion as "very reasonable." Bourke further testified that there was a "reasonable probability" that the sperm

---

4. As the State correctly points out, preponderance of the evidence is the presumed standard of proof in civil actions, including civil matters where the cause of action is based upon or closely related to an underlying criminal charge. *Martinez v. State*, 24 S.W.3d 10, 20 n. 10 (Mo.App. E.D.2000). In fact, even when the legislature is silent as to the standard of proof to be applied in a statutorily created cause of action, this is regarded as a signal that the legislature intended for the preponderance of the evidence standard to apply. *Id.*

did not come from the rapist, but only a "possibility" that the rapist was the source of the sperm. In addition, both the prosecutor and defense counsel maintained at trial the source of the sperm and seminal fluid was not Movant. *See Snowdell*, 90 S.W.3d at 515 (the motion court denied DNA testing under Section 547.035 of a pubic hair where other testing determined the hair did not come from the defendant because further testing would only be cumulative where the jury was fully aware at trial that the pubic hair did not belong to the defendant). Under the preponderance of the evidence standard, the testimony demonstrated that it is more probable than not that the sperm found in the vaginal swab came from the victim's prior sexual activity and not the rapist.

Furthermore, the uncontradicted evidence was that the victim's panties were removed prior to the rape, and that she did not put them back on after the rape. There is no evidentiary basis for concluding that the seminal fluid found on the victim's panties came from the rapist. The victim testified her panties were removed before the rapist put his penis in her mouth and then withdrew without ejaculating. No seminal fluid was found in the oral swab taken from the victim. Movant's suggestion that the rapist began leaking seminal fluid after he withdrew from the victim's mouth and then somehow managed to drip that seminal fluid onto the victim's panties that had already been removed and discarded is not reasonably probable. Movant's own expert, Bourke, testified he would not expect to find the rapist's seminal fluid on the panties that had been removed before the rape. The motion court's finding that Movant's theories of how the rapist could have deposited seminal fluid onto the victim's panties were sheer speculation was not clearly erroneous.

Movant spends a significant portion of his argument attacking the victim's credibility at trial and in the post-conviction proceedings. As the motion court correctly found Sections 547.035 and 547.037 do not give the movant the right to attack witness credibility from the trial, but rather give the movant the opportunity to demonstrate his innocence by DNA testing. Moreover, the motion court found the victim's testimony in the post-conviction proceedings regarding the reasons for the unidentified male's sperm and seminal fluid on the vaginal swab and her panties and her identification of Movant as the rapist to be credible. As is the standard with other post-conviction motions, credibility determinations are the province of the motion court, and those credibility determinations are given deference on appeal. *Hubbard v. State*, 31 S.W.3d 25, 34 (Mo.App. W.D. 2000).

The motion court's findings of fact and conclusions of law denying Movant's motion for release are not clearly erroneous. Movant's point is denied.

The denial of Movant's motion for release pursuant to Section 547.037 is affirmed.

CLIFFORD H. AHRENS, J. and SHERRI B. SULLIVAN, J., concur.