**Ronnie NELSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 88797.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 26, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 8, 2008.

Application for Transfer Denied
May 20, 2008.

Scott Thompson, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie L. Wan, Asst. Atty. Gen., Jefferson City, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

We decide a novel issue of law: whether an individual, who has never had a driver's license, and therefore argues that he has never had a "driving privilege," may nevertheless stand convicted of driving while his driving privilege is revoked. The movant, Ronnie E. Nelson, appeals the motion court's denial of his Rule 24.035 motion for post-conviction relief, wherein he contends that a factual basis did not exist for his pleas of guilty to the offense of driving while revoked. We reject this argument and affirm the motion court's judgment.

## Factual Background

The prosecuting attorney of Jefferson County, Missouri, charged the defendant with five counts of the class D felony[1] of driving while his driving privilege was revoked, in violation of Section 302.321 RSMo. (2003) (Matthew Bender, LEXIS, through 2002 legislation)(amended 2005), along with other offenses, which are not at issue in this appeal.

After the movant and the State reached a plea agreement, the movant appeared before the plea court to enter his pleas of guilty in each of the five cases. The prosecuting attorney recounted the evidence in each case. As is pertinent to the driving-while-revoked charges, the prosecutor specified five different occasions in 2004 and 2005 when the movant operated a motor vehicle on a certain highway in Jefferson County while his driving privilege was revoked. The prosecutor noted that the movant's driving privilege had been revoked multiple times by the State of Missouri, and that a revocation, which initially took effect on April 4, 1986, remained in force. The prosecutor also observed that the movant had numerous other point revocations and two 10–year denials of his driving privilege. And, as reflected in the informations, and acknowledged by the movant at the plea hearing, the movant had previously been convicted three times of driving while revoked and driving while intoxicated in 2000 and 2001.

The movant admitted the recited facts and also affirmed that he has never had a

driver's license. After the prosecutor set forth the range of punishment for the offenses and announced the State's recommendation, the plea court inquired into the voluntariness of the movant's pleas and reviewed his various rights and the consequences of pleading guilty, all of which the movant stated he understood. The movant then pleaded guilty to five counts of driving while his driving privilege was revoked.[2] The plea court found that the movant's pleas of guilty were voluntarily and intelligently made, with a full understanding of the charges, the movant's rights, and the consequences of the pleas. The plea court further found that a factual basis existed for the pleas, and then accepted the movant's guilty pleas and sentenced the movant to five concurrent terms of four years' imprisonment.

After being delivered to the Department of Corrections, the movant filed a *pro se* motion to vacate, set aside, or correct the judgment and sentence. Appointed counsel then filed an amended motion. As grounds for relief, the movant alleged that the plea court impermissibly accepted his guilty pleas and entered convictions because a factual basis did not exist for the pleas. The movant posited that because he had never held a driver's license or driving privilege, he could not have had his license or privilege canceled, suspended, or revoked so as to be eligible for criminal liability under Section 302.321. Thus, he argued, there was no factual basis for his

---

1. Because of movant's extensive history of driving while intoxicated, driving while revoked, and driving while suspended, he was charged and sentenced as a class D felon pursuant to section 302.321.2 RSMo. (2003) (Matthew Bender, LEXIS, through 2002 legislation)(amended 2005). Normally, driving while revoked is a class A misdemeanor. Section 302.321. All statutory references are to RSMo. (2003) (Matthew Bender, LEXIS,

through 2002 legislation) except as otherwise indicated.

2. The movant also pleaded guilty to two counts of driving while intoxicated, Section 577.010 RSMo. (2000). The movant did not seek relief from these convictions. The State filed a *nolle prosequi* for all other remaining counts.

pleas of guilty to the offense of driving while revoked.

The motion court denied the movant's motion for relief. The court acknowledged that the movant has never had a Missouri driver's license. The court reasoned, however, that the State had not charged the movant with driving while his driver's license was revoked or suspended, but had instead charged the movant with driving while his operating privilege was revoked or suspended. The court noted that Section 302.321 specifically authorizes the prosecution of any individual who operates a motor vehicle on a highway when his driving privilege has been canceled, suspended, or revoked. The movant now appeals the motion court's ruling.

## Standard of Review

This Court's review of a motion court's denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Dorsey v. State*, 115 S.W.3d 842, 845 (Mo. banc 2003); *Flores v. State*, 186 S.W.3d 398, 399 (Mo.App. E.D.2006). We presume the motion court's findings and conclusions are correct. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). A motion court's findings and conclusions are clearly erroneous only if, after a full review of the record, this Court is left with a definite and firm impression that a mistake has been made. *State v. Roll*, 942 S.W.2d 370, 375 (Mo. banc 1997); *Flores*, 186 S.W.3d at 398.

## Discussion

A plea court may not enter judgment on a guilty plea unless it determines there is a factual basis for the plea. Rule 24.02(e). The purpose of Rule 24.02(e) is to aid in the constitutionally required determination that a defendant enter his plea of guilty intelligently and voluntarily. *Orr v. State*, 179 S.W.3d 328, 329 (Mo.App. S.D.2005); *Myers v. State*, 223 S.W.3d 165, 167 (Mo.App. S.D.2006). "The Rule is designed to protect an accused who may appear to be pleading voluntarily and with an understanding of the nature of the charge, but who does so without realizing that his conduct does not actually fall within the charge." *Orr* 179 S.W.3d at 329. "The need for this protection requires courts to reject a guilty plea if the facts do not establish the offense." *Id.*

"A factual basis exists if the defendant understands the facts presented at the guilty plea proceeding and those facts establish the commission of the charged crime." *Martin v. State*, 187 S.W.3d 335, 339 (Mo.App. E.D.2006). The record in this case reflects that the movant expressed an understanding of the charges against him and the facts giving rise to the charges. Indeed, the movant does not contend that he misunderstood the nature of the charges or their underlying facts. Rather, he exclusively argues that those facts do not establish the commission of the charged crimes.

The State charged the movant with driving while his driving privilege was revoked, in violation of Section 302.321. That section provides, in pertinent part, as follows:

A person commits the crime of driving while revoked if he operates a motor vehicle on a highway when his license or driving privilege has been canceled, suspended or revoked under the laws of this state or any other state and acts with criminal negligence with respect to knowledge of the fact that his driving privilege has been canceled, suspended or revoked.

Section 302.321.1.

The movant argues that a reading of various Missouri statutes reveals that an

individual holds a "driving privilege" for purposes of Section 302.321 only where he applies for and is awarded such a privilege through either licensure or the "limited privilege" provision of Section 302.309.[3] Thus, he contends that the imposition of liability under Section 302.321 for "driving while ... driving privilege has been canceled, suspended, or revoked" does not apply to him because he never held such a privilege by virtue of either licensure or the explicit grant of a "limited privilege" pursuant to Section 302.309.

In support of his proposition that a driving privilege is awarded through licensure, the movant points to the language of two different statutory sections: Section 302.041 RSMo. (2000) and Section 302.150 RSMo. (2000). Section 302.041 RSMo. (2000), which provides that licensure by a municipality is not required, states that "[a]ny person licensed to operate a vehicle may exercise *the privilege thereby granted* upon all highways in this state...." (Emphasis added.)[4] Section 302.150 RSMo. (2000), which deals with nonresident drivers, provides that "[t]he privilege of driving a motor vehicle on the highways of this state given to a nonresident hereunder shall be subject to suspension, revocation or disqualification ... in like manner and for like cause as a license issued hereunder may be suspended, revoked or disqualified."[5] The movant credibly posits that this section suggests that a nonresident driver, though failing to hold a Missouri license, nevertheless enjoys a driving privilege in Missouri by virtue of his or her out-of-state license, and that Missouri has the power to revoke this privilege. Other than licensure, the movant points to the "limited privilege" provision of Section 302.309 as the only other avenue by which one is vested with a "driving privilege" for purposes of Section 302.321. Section 302.309, which authorizes the issuance of a hardship license, states that under certain conditions "the court or director may grant such limited driving privilege as the circumstances of the case justify if the court or director finds undue hardship would result to the individual...." Section 302.309.3(2).[6]

---

3. Section 302.309 was amended in 2004, effective September 30, 2005.

4. Section 302.041—**License by municipality not required**—reads in full:

 Any person licensed to operate a vehicle may exercise the privilege thereby granted upon all highways in this state and shall not be required by any municipality or other political subdivision having authority to adopt local police regulations to obtain any other license in order to exercise such privilege, except that this section shall not be construed as depriving municipalities of the right to license, tax and regulate taxicab drivers.

5. Section 302.150—**Driving privilege of nonresident subject to suspension, revocation or disqualification—conviction records sent to other states**—in pertinent part, reads in full:

 1. The privilege of driving a motor vehicle on the highways of this state given to a nonresident hereunder shall be subject to suspension, revocation or disqualification

by the director of revenue in like manner and for like cause as a license issued hereunder may be suspended, revoked or disqualified.
Section 302.150.1 RSMo. (2000).

6. Section 302.309—**Return of license, when-limited driving privilege, when granted, application, when denied—judicial review of denial by director of revenue—rulemaking**—in pertinent part, reads in full as follows:

 1. Whenever any license is suspended pursuant to section 302.302 to 302.309, the director of revenue shall return the license to the operator immediately upon the termination of the period of suspension and upon compliance with the requirements of chapter 303, RSMo.

 2. Any operator whose license is revoked pursuant to these sections, upon the termination of the period of revocation, shall apply for a new license in the manner prescribed by law.

 3. (1) All circuit courts or the director of revenue shall have jurisdiction to hear

We agree that the term "privilege" may refer to the actual vested privilege to drive, which exists by virtue of licensure by a state or an award of a limited driving privilege. But we also hold that it can refer to the potential unvested privilege to seek licensure. We rest this conclusion on traditional principles of statutory construction and an examination of caselaw.

 The movant's argument hinges on the meaning of "driving privilege" in Section 302.321. The term is left undefined by statute.[7] The primary rule of statutory construction is to ascertain the intent of the legislature by giving the language used its plain and ordinary meaning. *United Pharmacal Co. of Missouri, Inc. v. Missouri Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. banc 2006). "Where the language is clear and unambiguous, there is no room for construction." *Hyde Park Housing Partnership v. Director of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993). When the legislative intent cannot be discerned from the plain language of the statute, however, rules of statutory construction may be applied to resolve any ambiguity. *United Pharmacal*, 208 S.W.3d at 909. "Absent statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *American Healthcare Management, Inc. v. Director of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999). We have found no resolution of the movant's claims by recourse to dictionaries. But this is for a reason. The movant argues that, under Missouri statutes, the privilege to operate a motor vehicle is created either by licensure or by the award of a limited driving privilege. As this argument suggests, the term "privilege" has not always had a singular defined meaning in Missouri's statutory scheme.

 Section 302.321 provides that "[a] person commits the crime of driving while revoked if he operates a motor vehicle on a highway when his license *or* driv-

---

applications and make eligibility determinations granting limited driving privileges. Any application may be made in writing to the director of revenue and the person's reasons for requesting the limited driving privilege shall be made therein.
(2) When any court of record having jurisdiction or the director of revenue finds that an operator is required to operate a motor vehicle in connection with any of the following:
(a) A business, occupation, or employment;
(b) Seeking medical treatment for such operator;
(c) Attending school or other institution of higher education;
(d) Attending alcohol or drug treatment programs; or
(e) Any other circumstance the court or director finds would create an undue hardship on the operator;
the court or director may grant such limited driving privilege as the circumstances of the case justify if the court or director finds undue hardship would result to the individual, and while so operating a motor vehicle within the restrictions and limitations of the limited driving privilege the driver shall not be guilty of operating a motor vehicle without a valid license.

7. Missouri law does define the term "driver's license" or "license," as used in Sections 302.500 to 302.540:

a license, permit, or privilege to drive a motor vehicle issued under or granted by the laws of this state. The term includes any temporary license or instruction permit, any nonresident operating privilege, and the privilege of any person to drive a motor vehicle whether or not the person holds a valid license.

Section 302.500(4) RSMo. (2000). This definition, which provides that "a license, permit, or privilege to drive" are all forms of licensure, governs only Sections 302.500 to 302.540 and does not aid us in interpreting Section 302.321, which distinguishes between a license and a privilege.

ing privilege has been canceled, suspended or revoked...." (Emphasis added.) We presume that the legislature intended for every word, clause, sentence, and provision of a statute to have effect. *Civil Service Commission of the City of St. Louis v. Members of the Board of Aldermen of the City of St. Louis*, 92 S.W.3d 785, 788 (Mo. banc 2003). Indeed, "a presumption exists 'that the legislature does not insert idle verbiage or superfluous language in the statute.'" *Id.* In construing statutes, we are required to give meaning to each word or phrase of the statute whenever possible. *State ex rel BP Products North America Inc. v. Ross*, 163 S.W.3d 922, 927 (Mo. banc 2005). If a "license" and a "driving privilege" were one and the same, it would render the statute redundant. The phrase "or driving privilege" would be idle verbiage and superfluous language if a "driving privilege" was coextensive with a "license." Accordingly, we find that the use of the word "or" evidences an intent by the legislature to distinguish a "license" from a "driving privilege." A person may have a driving privilege even if he does not have a driver's license. The movant counters that the phrase "or driving privilege" in section 302.321 exists only to govern the conduct of out-of-state drivers, by virtue of Section 302.150 RSMo. (2000), and those awarded limited driving privileges, by virtue of Section 302.309. The movant's conception of a "driving privilege" is too narrow.

We acknowledge that the Missouri Supreme Court, in *Adkisson v. Director of Revenue*, 891 S.W.2d 131 (Mo. banc 1995), appeared to reject the authority of the Director to act with regard to a person's driving privileges until an applicant sought a license. There, the Supreme Court held that a motorist's petition for review challenging his loss of driving privileges was not yet justiciable because the Director of Revenue had only announced the loss of the motorist's driving privileges, but had not yet denied an application for a license. The Supreme Court broadly observed, "[t]his statutory scheme does not give the director any authority to act with regard to a person's driving privileges under Section 302.060 until an application was made for a license." *Adkisson*, 891 S.W.2d at 133. The legislature, however, responded with an amendment to Section 302.060. Prior to the amendment, the statute provided: "The director shall not issue any license hereunder." After the amendment, the introductory provision states: "The director shall not issue any license and shall immediately deny any driving privilege." Section 302.060 RSMo. (2000).[8] In *Harding v. Lohman*, this Court held that by adding the language, "and shall immediately deny any driving privilege," to Section 302.060, the legislature granted the Director authority to deny driving privileges even before the driver applies for a new license. *Harding v. Lohman*, 27 S.W.3d 820, 824–5 (Mo.App. W.D.2000). In other words, an individual need not have a license to be denied driving privileges. The present statutory language of Section 302.060 RSMo. (Supp.2007) provides that a driving privilege is distinct from a driver's license and the immediate right to drive. This conclusion is bolstered by the language of Section 302.500(4) RSMo. (2000), which governs administrative suspensions and revocation and provides that the terms "[d]rivers license" or "license" includes "any temporary license or instruction permit, any nonresident operating privilege, and *the privilege of any person to drive a motor vehicle whether or not the person holds a valid license*." (Emphasis added.)

---

8. Section 302.060 dictates that the director "shall not issue any license and shall immedi- ately deny any driving privilege" in twelve statutorily-enumerated circumstances.

In interpreting statutes, we must examine the words with a view towards the problem the legislature sought to address with the statute's enactment. *Wilson v. Director of Revenue*, 873 S.W.2d 328, 329 (Mo.App. E.D.1994). "We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure." *Id.* Here, the purpose of this statutory section is to ensure the safety of roads in Missouri. Under movant's view, the statute would only punish those with had an actual vested privilege to drive. But the legislature has made plain that the Director may deny driving privileges to an unlicensed driver. To hold that the State cannot prospectively forbid a driver from driving in this State simply because the driver has refused or failed to obtain a license or limited driving privilege is nonsensical. Such a holding would fly in the face of common sense and undermine the very purpose of the statute. Certainly, this is not what the legislature intended.

A teenager in search of a car on Saturday night might plead with a parent for permission to drive the family car. The parent may respond that, given the teenager's misconduct, the "car keys have been taken away from him." The persistent teenager will doubtless rejoin, "You can't take the keys away until you have given them to me." At bottom, the movant's argument is no different from that of our unhappy teenager. But the privilege to drive may be denied or revoked even if it has not been yet awarded, whether by a conscientious parent or the Director of Revenue.

The Director revoked the movant's driving privilege. And the movant, in repeated defiance of that revocation, operated a motor vehicle. The facts, as alleged in the information and recited at the plea hearing, establish the commission of the charged crimes. The record shows that the movant expressed an understanding of the charges against him and the facts giving rise to the charges. Accordingly, we hold that a factual basis existed for the movant's pleas of guilty to the charged offenses of driving while revoked. The motion court did not clearly err in denying the movant's motion for post-conviction relief.

We affirm the judgment of the motion court.

BOOKER T. SHAW, J., and
NANNETTE A. BAKER, J., concur.