Lisa White Hardwick, Judge
Paul C. Williams appeals from the judgment denying his Rule 24.035 motion after he pled guilty to first-degree statutory rape. Williams contends the motion court clearly erred in finding: (1) that he was not prejudiced by the State's arguments at sentencing; and (2) that he was not prejudiced by his counsel's failure to object to the State's arguments at sentencing. For reasons explained herein, we find no error and affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY
Williams engaged in sexual intercourse with his brother-in-law's twelve-year-old niece, S.M.D., approximately 70 times at locations in Missouri and Kansas over the course of one year. During that year, S.M.D. became pregnant and gave birth to Williams's child when she was thirteen. In April 2003, Williams was found guilty of three counts of rape and two counts of aggravated criminal sodomy following a jury trial in Kansas. The Kansas district court imposed a sentence of 165 months' imprisonment. Following that proceeding, Williams pleaded guilty to one count of first-degree statutory rape after being charged by the State of Missouri.[1]
During the sentencing hearing, S.M.D. and members of her family testified about the hardships suffered by S.M.D. as a result of Williams's actions. The State read into evidence a section of transcript from Williams's Kansas trial, in which he stated:
Q: Do you see anything wrong with a man your age writing such a letter to a girl her age?
A: If you knew her, if you talked to her, you wouldn't ask the questions.
Q: You don't see her as a child?
*103 A: She really is not a child.
Q: You see her as a grown woman able to make decisions?
A: She is a young adult.
Q: About having sex on her own?
A: She is a young adult.
Q: Do you think she can choose to have sex with you or not?
A: It's not my department.
Q: You see nothing wrong with this letter?
A: No, I don't.
Q: You see nothing wrong with a 41-year-man [sic] having intercourse with a 13 or 12-year-old girl?
A: That would bother me, yeah.
Q: Would it be wrong?
A: Yeah.
Q: Why did you put things in the letter about not telling people about what you two were doing?
A: After writing the sex episodes, I wanted to come across to show her what would happen if it did. I knew she had a crush on me.
The letter at issue in that line of questioning had previously been presented to the circuit court. In it, Williams professed his love for S.M.D., described, in graphic detail, sexual acts he either had completed or wished to complete with S.M.D., and stated:
Sure, you are 27 years my junior. We both know what they would say, if they knew. They would ask me, 'What are you doing raping kids now,' or 'You know she's too young for you,' or 'What you did was rape pure and simple and you're going to jail for it,' or 'You will not be allowed to see her or the baby but you will support them,' or 'You know you're breaking up your 20-year marriage for some young jailbait.' I would hurt my family and will never be trusted again.
In support of its request for a thirty-year sentence, the State directed the court to the presentence investigation report, which said that Williams "adamantly denies that he committed the present offense and further denies that he touched the victim in any sexual manner." Further, Williams was quoted as saying, "They're wanting me to admit to something I didn't do." During closing argument, the State argued, without objection:
Now [t]he [c]ourt's had a hearing about those statements and those statements are simply this. Those statements are simply statements of a man who is yet to come to grips with what he did. And because of that, he is a high risk of reoffending.
The other thing that [t]he [c]ourt often would consider in a case like this, quite appropriately, is that when a defendant pleads guilty and spares the victim the pain and trauma of a trial, that some measure of mercy is appropriate. And Your Honor, that's true in most cases. But I submit to you that's not true in this case.
And the reason is that he's already inflicted that pain, that suffering, that trauma on this victim, by taking her to trial in Kansas, where the evidence was the same. The DNA evidence was there in the Kansas trial. Everybody knew about that evidence before that trial. He knew about that evidence. He knew about that letter. He knew what he had done, but despite all of that, he put this victim through the pain and suffering of a trial.
And you heard what S.M.D. said. It made her very uncomfortable.
You heard what her aunt said. That having to testify at that trial tore her up.
*104 And so in this case, Your Honor, the fact that this man has pleaded guilty is not a cause for any measure of mercy from [t]his [c]ourt.
In conclusion, Your Honor, I would say this. This crime is unspeakably repugnant. This defendant prayed [sic] on his own niece. He impregnated her and then wrote a letter describing his disgusting acts.
And the truth of the matter is [t]he [c]ourt can't make everything right in this case. It can't make things right for this little girl.
The State then requested the circuit court sentence Williams to a life sentence to be served consecutively with the term of imprisonment in Kansas. Williams requested that he be sentenced to twelve years, preferably executed concurrently with his sentence in Kansas. Williams's counsel argued that, by pleading guilty, Williams had accepted responsibility for his actions. Immediately prior to the imposition of sentence, Williams asserted, "I didn't take advantage of S.M.D. What was the truth and what was told as lies doesn't matter now. The deed is done. It cannot be undone. We may regret some things that were done in our past, but we cannot change." The circuit court then sentenced Williams to twenty-two years' imprisonment to be served consecutively with his Kansas sentence.
Upon conclusion of his incarceration in Kansas, Williams was delivered to the Missouri Department of Corrections on April 28, 2014. On October 14, 2014, Williams timely filed his pro se 24.035 motion.[2] The court appointed the Office of the Public Defender to represent Williams and, following the motion court's finding of abandonment, a timely amended motion was filed on April 15, 2015. Following an evidentiary hearing, the motion court denied Williams's Rule 24.035 motion. Williams appeals.
STANDARD OF REVIEW
Our review of the denial of Williams's Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k) (2014). We presume the motion court's findings of fact and conclusions of law are correct. Nelson v. State , 250 S.W.3d 386, 389 (Mo. App. 2008). "The motion court's findings and conclusions are clearly erroneous only if, after the review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." Weeks v. State , 140 S.W.3d 39, 44 (Mo. banc 2004).
To prevail on his claim of ineffective assistance of counsel, Williams had the burden of demonstrating, by a preponderance of the evidence, that defense counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances and that he was thereby prejudiced. Dorsey v. State , 448 S.W.3d 276, 286-87 (Mo. banc 2014) (citing Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ).
*105 To demonstrate prejudice, "a movant must show a reasonable probability that, but for counsel's errors, the outcome would have been different." Id. at 287. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694, 104 S.Ct. 2052. Williams is required to prove both the performance and prejudice prongs of the Strickland test, and if we find that he failed to satisfy either prong, we need not consider the other. Rollins v. State , 454 S.W.3d 380, 384 (Mo. App. 2015).
ANALYSIS
In Points I and II, Williams contends that the motion court's finding that the State's closing argument did not attempt to punish him for exercising his constitutional right to a jury trial is clearly erroneous. Williams asserts that, by arguing Williams deserved no measure of mercy for pleading guilty because he had exercised his right to a jury trial in a related Kansas prosecution, the State improperly led the circuit court to impose an unconstitutional sentence.
The State contends that Williams has waived his argument concerning prosecutorial misconduct because he failed to raise the argument on direct appeal. In support, the State cites Ivory v. State , which states, "Generally, claims of prosecutorial misconduct are to be brought up on direct appeal and are not cognizable in a Rule 29.15 proceeding." 422 S.W.3d 503, 507 (Mo. App. 2014). While that argument is true in the context of a Rule 29.15 motion, it does not apply to motions brought under Rule 24.035.
" 'In a direct appeal of a judgment and sentence entered as a result of a guilty plea, our review is restricted to [claims involving] the subject-matter jurisdiction of the trial court and the sufficiency of the information or indictment.' " State v. Onate , 398 S.W.3d 102, 105 (Mo. App. 2013) (alteration in original) (quoting State v. Klaus , 91 S.W.3d 706, 706 (Mo. App. 2002) ). As a claim of prosecutorial misconduct falls under neither of these categories, it would not be cognizable in a direct appeal. A movant asserting errors concerning increased punishment due to the exercise of constitutional rights, therefore, must bring those claims in a post-conviction proceeding. State v. Hopkins , 432 S.W.3d 208, 212-13 (Mo. App. 2014). Consequently, Williams's claim of prosecutorial misconduct is cognizable in this Rule 24.035 proceeding.
"[A] court may not increase a defendant's sentence because the defendant exercised his right to a jury trial." State v. Barton , 240 S.W.3d 693, 708 (Mo. banc 2007). A court may certainly, however, "take into account the character of the defendant, including his attitude concerning the offense." State v. Lindsey , 996 S.W.2d 577, 580 (Mo. App. 1999). In fact, the court has a statutory obligation "to undertake a case by case, defendant by defendant, evaluation in order to fashion an appropriate punishment 'which not only fits the crime but which also fits the criminal.' " State v. Brewster , 836 S.W.2d 9, 15 (Mo. App. 1992) (quoting Thurston v. State , 791 S.W.2d 893, 897 (Mo. App. 1990) ).
Williams asserts that the State's closing argument asked the sentencing court to impermissibly punish him for exercising his right to trial in the previous Kansas proceeding. At the heart of Williams's contention is a single line of argument in which the State asserted:
The other thing that [t]he [c]ourt often would consider in a case like this, quite appropriately, is that when a defendant pleads guilty and spares the victim the pain and trauma of a trial, that some *106 measure of mercy is appropriate. And Your Honor, that's true in most cases. But I submit to you that's not true in this case.
And the reason is that he's already inflicted that pain, that suffering, that trauma on this victim, by taking her to trial in Kansas, where the evidence was the same. The DNA evidence was there in the Kansas trial. Everybody knew about that evidence before that trial. He knew about that evidence. He knew about that letter. He knew what he had done, but despite all of that, he put this victim through the pain and suffering of a trial.
And you heard what S.M.D. said. It made her very uncomfortable.
You heard what her aunt said. That having to testify at that trial tore her up.
And so in this case, Your Honor, the fact that this man has pleaded guilty is not a cause for any measure of mercy from [t]his [c]ourt.
In conclusion, Your Honor, I would say this. This crime is unspeakably repugnant. This defendant prayed [sic] on his own niece. He impregnated her and then wrote a letter describing his disgusting acts.
And the truth of the matter is [t]he [c]ourt can't make everything right in this case. It can't make things right for this little girl.
Taken alone, this argument might appear to be a request for an unconstitutional enhancement based on Williams's decision to exercise his right to a jury trial. We, however, consider the entire record in our review.[3] See Weeks , 140 S.W.3d at 44.
At several points throughout the presentation of evidence and argument, the State asserted that Williams had failed to accept responsibility for his actions, which is a proper consideration for the court in imposing a sentence. See Lindsey , 996 S.W.2d at 580. In support of that contention, the State pointed to several statements Williams made in the presentence investigation that demonstrated he lacked remorse for his actions.
A review of the entire record demonstrates that the State's argument was an extension of its assertion that Williams was not deserving of the mercy traditionally extended to defendants who had agreed to plead guilty and accept responsibility for their actions. The State's request was not predicated on Williams's exercise of his right to a jury trial. Rather, the State asked the circuit court to find that Williams's remorseless attitude towards the damage caused by the repeated sexual acts perpetrated against the twelve-year-old victim presented a case in which a plea presented no cause for mercy. "Prosecutors may discuss the concept of mercy in their closing arguments because mercy is a valid sentencing consideration, and in that connection may argue that the defendant should not be granted mercy." State v. Deck , 994 S.W.2d 527, 543 (Mo. banc 1999) (citation omitted).
Moreover, Williams's reliance on State v. Wright is misplaced. In imposing sentence *107 in Wright , the circuit court stated, in pertinent part:
You have not accepted responsibility for your crime. And, in this case, your victimization of these two young girls was magnified or aggravated by the fact that they were required to come in and testify.
And it was obvious to the Court that it was a traumatic event for them to come in here to testify in front of you, as well as the 12 jurors and the Court, as to your activities last July.
And so with those factors and consideration , Mr. Wright, I am going to sentence you under Count I to a term of two years in the Department of Corrections; and under Count II for another two year term of imprisonment. Count II is to run consecutive to Count I.
998 S.W.2d 78, 82 (Mo. App. 1999) (emphasis in original), abrogated on other grounds by State v. Porter , 439 S.W.3d 208, 211-13 (Mo. banc 2014). These statements clearly showed that the circuit court in Wright improperly based its sentence on the fact that the defendant exercised his right to a jury trial.
In this case, however, the court did not make such statements or explain its reasons for imposing a twenty-two year sentence. Even if the prosecutor's argument could be interpreted as suggesting that the court should base its sentence on Williams's exercise of his constitutional right to a jury trial, we presume that the court ignored it. We "presume[ ] that inadmissible evidence is neither prejudicial nor fundamentally unfair because judges are presumed not to consider improper evidence during sentencing." State v. Taylor , 944 S.W.2d 925, 938 (Mo. banc 1997).
Unlike in Wright , Williams cannot point to any statement that the circuit court made that rebuts this presumption. During the evidentiary hearing on Williams's Rule 24.035 motion, the Honorable Abe Shafer IV, the judge who had presided over the Williams's sentencing, testified. Judge Shafer stated that, although he did not have a specific recollection of Williams's sentencing, he believed, upon further review of court records, that the State's argument concerned Williams's acceptance of responsibility. Judge Shafer continued, "Frankly, my conclusion on reading this is [Williams] clearly accepted responsibility and to the extent that should be considered in sentencing I am sure I did consider it." Williams's conclusory allegation that Judge Shafer "may have considered something improper" does not leave us firmly convinced that the motion court's findings are clearly erroneous. Therefore, Points I and II are denied.
In Points III and IV, Williams contends his counsel's failure to object to the State's argument discussed in Points I and II constituted ineffective assistance of counsel. In its findings, the motion court stated that it was "fair to say that based on [defense counsel's] testimony, his failure to object was not a matter of strategy." We, therefore, move to the prejudice analysis.
As a preliminary matter, Williams alleges that the motion court applied the wrong standard for reviewing prejudice. The proper standard of review for prejudice on claims of sentencing error is "that but for counsel's deficient performance, there is a reasonable probability that he would have received a lesser sentence." Washington v. State , 415 S.W.3d 789, 795 (Mo. App. 2013). Williams alleges that the court misconstrued the standard of review for prejudice, "finding that prejudice cannot be established if the Court imposed a sentence less than the sentence recommended by the prosecutor." He contends this is demonstrated by the court's finding that "Movant cannot claim prejudice when *108 he received a lesser sentence than what the State requested." In focusing only on this sentence, Williams ignores the paragraph immediately following it, in which the court found, "Movant has failed to demonstrate prejudice caused by counsel's alleged errors and has failed to establish that there was a reasonable probability that the outcome would have been different, but for counsel's errors." We find no reason to believe the motion court applied the incorrect standard in analyzing Williams's prejudice claim.
Additionally, Williams argues that, irrespective of the ultimate sentence imposed, the mere fact that his sentence might have been increased by even a single day due to an unconstitutional consideration satisfies the Strickland standard for prejudice related to sentencing. Williams's argument presumes that the circuit court unconstitutionally considered his choice to go to trial. In fact, Judge Shafer's testimony indicates the opposite:
As I sit here today, I'm going to change the wording just a little bit. As I sit here today I do not see that that argument regarding acceptance of responsibility in Kansas or the PSI, I don't see that that would have affected me because I know how I did things and if someone came in and pled guilty, which this man did, he, in my opinion, was entitled to some measure of leniency for acceptance of responsibility and that measure was my determination to make.
Now, he was sentenced for the crime that he admitted to in Platte County, Missouri, not sentenced for any other crime because I didn't have any authority or jurisdiction over any other crime. It was a crime before me that he pled guilty to, he accepted responsibility and I am entirely confident that I took into account that acceptance of responsibility in the sentence that I pronounced.
Therefore, we are not firmly convinced that the motion court's finding that Williams failed to demonstrate prejudice from counsel's failure to object is clearly erroneous. Points III and IV are denied.
CONCLUSION
The judgment is affirmed.
All Concur.

Williams engaged in sexual acts with S.M.D. in both Kansas and Platte County, Missouri, beginning in late 2000 or early 2001. The conduct underlying the Missouri indictment and conviction occurred between February 1, 2001, and March 31, 2001.

Prior to addressing Williams's claims on the merits, we must first determine whether his motion was timely filed. Logan v. State , 22 S.W.3d 783, 785 (Mo. App. 2000). Although Williams's sentence was imposed in 2004, he was not delivered to the Missouri Department of Corrections until April 28, 2014. Williams did not undertake an appeal on this conviction; therefore, the version of Rule 24.035 in effect in 2014 required Williams's motion to be filed "within 180 days of the date the person is delivered to the custody of the department of corrections." See Rule 24.035(m) (2018). Williams filed his pro se motion 170 days after being delivered to the Missouri Department of Corrections. Therefore, his initial motion was timely filed. See Roth v. State , 921 S.W.2d 680, 681 (Mo. App. 1996).

Similarly, Williams's contention that the motion court misunderstood the nature of his claim is misplaced. It is clear from the text of the motion court's judgment that it understood Williams's claim concerning the alleged improper argument, but it did not believe that a full review of the record demonstrated that the State was arguing for an increased punishment based upon the exercise of a constitutional right. The Court is not required to specifically quote back the arguments Williams alleges are improper. See Ezell v. State , 9 S.W.3d 616, 619 (Mo. App. 1999) ("Meaningful appellate review is premised upon sufficiently specific findings of fact and conclusions of law that are responsive to movant's claims.")